UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ALVERNEST KENNEDY, JR.,

          Plaintiff,

       v.                                               Case No. 25-CV-962

CO GARAY, CO JOCIUS, CO HALE,
RN REGAZZI-WHEELER, and RN MCCULLEN,

          Defendants.

---

## SCREENING ORDER

---

Plaintiff Alvernest Kennedy, Jr., who is currently serving a state prison sentence at Racine Correctional Institution and representing himself, filed a complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. This matter comes before the Court on Plaintiff's motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

### MOTION TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE

Plaintiff has requested leave to proceed without prepayment of the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. § 1915(b)(1). Plaintiff has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint, as required under 28 U.S.C. § 1915(a)(2). He has also been assessed and paid an initial partial filing fee of $51.07. Plaintiff's motion for leave to proceed without prepaying the filing fee will be granted.

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, Plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

### ALLEGATIONS OF THE COMPLAINT

According to the complaint, on February 24, 2025, Plaintiff was attending recreation at the gym. Compl. ¶ 7, Dkt. No. 1. At approximately 6:20 p.m., Plaintiff began having an allergic reaction and broke out in hives. *Id.* Plaintiff left the gym and returned to his housing unit, which was located on the upper tier of the unit, around 6:30 p.m. *Id.* ¶ 8. At that time, Plaintiff's body was covered in hives, his eyes were swollen, his chest felt tight and heavy, and he faded in and out of consciousness. *Id.* ¶ 9.

Plaintiff heard Correctional Officer (CO) Garay approach Plaintiff's cell during his rounds. *Id.* ¶ 10. At approximately 6:40 p.m., Plaintiff stuck his head out of his cell and informed CO Garay that he needed a "medical emergency" as he was experiencing an allergic reaction, feeling very weak, and fading in and out of consciousness. *Id.* ¶ 11. After informing CO Garay of his situation, Plaintiff proceeded to lie down on his cell floor. *Id.* ¶ 12.

A short while later, CO Garay and CO Jocius asked Plaintiff if he could walk. Plaintiff informed them several times that he felt too weak and could not walk. *Id.* ¶ 13. During the exchange, Plaintiff blacked out. Once Plaintiff regained consciousness, he was located on the bottom tier of the unit. He asserts that he was in excruciating pain, had a busted lip, and injured his back and knees. *Id.* ¶ 14. CO Hale picked Plaintiff up off the floor at approximately 6:55 p.m. *Id.* ¶ 15. Health Services Unit (HSU) nursing staff arrived to check Plaintiff's vital signs and give him medication. *Id.* HSU staff took Plaintiff to the HSU for further observation where he remained for about an hour before he returned to his unit. *Id.* ¶ 16.

Plaintiff alleges that he learned from several inmates that CO Hale, CO Garay, and CO Jocius had dropped him numerous times while they took him from his assigned cell located on the upper level of the tier to the bottom level of the tier. *Id.* ¶ 17. He asserts that the correctional officers carried him haphazardly to the bottom level of the tier, dropped Plaintiff on his face on the upper level of the tier, and dropped him on his knees on the stairs. *Id.* ¶¶ 18–19.

On February 25, 2025, Plaintiff submitted a health services request to HSU stating that he was not able to sleep due to the severe pain and migraine he experienced after correctional officers dropped him on his head. *Id.* ¶ 28. After triage, Plaintiff was seen by HSU as needed. *Id.* ¶ 29. On February 28, 2025, Plaintiff submitted another health services request informing HSU staff that he was still experiencing migraine-type headaches, neck pain, and back pain stemming from being dropped multiple times by correctional officers. *Id.* HSU nursing staff responded, indicating that if Plaintiff had new or worsening symptoms, he could request a sick call. *Id.* ¶ 30.

On March 11, 2025, Plaintiff submitted an HSU form informing HSU staff that his headaches and pain had not abated. *Id.* ¶ 31. An HSU nurse examined Plaintiff on March 12, 2025. *Id.* On March 19, 2025, Plaintiff contacted HSU complaining about his headaches and the sharp pain in his neck and lower back. *Id.* ¶ 32. He advised that his pain prevented him from doing the lower back exercises the nurse gave him and that his prescribed medication was ineffective. *Id.* On March 20, 2025, HSU RN-4 McCullen responded that Plaintiff should be "respectful of other people's time," that he would be scheduled for a sick call, and that he would be assessed a co-pay. *Id.* ¶ 33. On March 21, 2025, Plaintiff sent an HSU form addressed to Health Services Manager Vasquez (not a defendant) to dispute the co-pay he was assessed. *Id.* ¶ 34. On April 7, 2025, Plaintiff informed HSU nursing staff that he continued to experience

4

headaches and pain in his knee, neck, and back. *Id.* ¶ 35. The nursing triaging staff responded on April 9, 2025, stating that Plaintiff's provider had been emailed. *Id.* ¶ 36.

On April 30, 2025, Plaintiff submitted an HSU form requesting further treatment for his head and back injury and asserting that HSU providers had ignored his complaints about his continuing headaches and pain. *Id.* ¶ 39. RN McCullen responded on May 1, 2025, stating that Plaintiff "did not qualify" because video footage did not match Plaintiff's claims. *Id.* ¶ 40. Plaintiff followed up and asked what he did not qualify for, and RN McCullen advised that Plaintiff's provider and security reviewed an incident report, that Plaintiff's needs are being met, and that Plaintiff must request a nurse sick call if he has health concerns. *Id.* ¶ 42. Plaintiff asserts that RN McCullen did not personally examine Plaintiff to ensure that he had no head, neck, or back injuries. *Id.* ¶ 43.

### THE COURT'S ANALYSIS

"To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)).

Plaintiff asserts that CO Hale, CO Garay, and CO Jocius subjected him to cruel and unusual punishment. "[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). The "core judicial inquiry" when considering the amount of force used is "whether [the] force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 6 (citing

5

*Whitley*, 475 U.S. at 320–21). Plaintiff alleges that CO Hale, CO Garay, and CO Jocius dropped him on his head and knees when they took him from his assigned cell located on the upper level of the tier to the bottom level of the tier. Based on these allegations, Plaintiff may proceed on an Eighth Amendment cruel and unusual punishment claim against CO Hale, CO Garay, and CO Jocius.

Plaintiff also claims that RN McCullen and RN Regazzi-Wheeler were deliberately indifferent to his medical needs. "[T]he Eighth Amendment, as the Supreme Court has interpreted it, protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." *Gabb v. Wexford Health Sources, Inc*., 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). The Court uses a two-part test to evaluate whether medical care amounts to cruel and unusual punishment; it asks (1) "whether a plaintiff suffered from an objectively serious medical condition" and (2) "whether the individual defendant was deliberately indifferent to that condition." *Id*. (quoting *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016) (en banc)).

Plaintiff asserts that RN McCullen's actions departed from "accepted professional standards or practices" when he found that Plaintiff "did not qualify" and failed to personally examine him to ensure that he had no head, neck, or back injuries. *Id.* ¶¶ 43, 47. Yet, the Court has no basis from which to infer that RN McCullen, a nurse who responded to health services requests, was responsible for examining inmates. RN McCullen promptly responded to Plaintiff's HSU requests and advised that Plaintiff's needs were being met and he could request a nurse sick call if he had additional health concerns. In short, Plaintiff has failed to state a deliberate indifference claim against RN McCullen. Nor does Plaintiff state a claim against RN Regazzi-

Wheeler. Although Plaintiff asserts that RN Regazzi-Wheeler was deliberately indifferent to his medical needs, Plaintiff's complaint contains no allegations against RN Regazzi-Wheeler. Accordingly, RN McCullen and RN Regazzi-Wheeler will be dismissed as defendants from this action.

Plaintiff may proceed on an Eighth Amendment cruel and unusual punishment claim against CO Hale, CO Garay, and CO Jocius based on his allegations that they repeatedly dropped him on his head and knees when they took him from his assigned cell located on the upper level of the tier to the bottom level of the tier.

**IT IS THEREFORE ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that RN McCullen and RN Regazzi-Wheeler are dismissed as defendants.

**IT IS FURTHER ORDERED** that, pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Plaintiff's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on the state defendants.

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, the defendants shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that the agency having custody of the prisoner shall collect from his institution trust account the $298.93 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each

time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Plaintiff is transferred to another institution, the transferring institution shall forward a copy of this order along with Plaintiff's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where the inmate is confined.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Honorable Byron B. Conway
> c/o Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 125 S. Jefferson Street, Suite 102
> Green Bay, WI 54301

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties. Therefore, failure to provide your correct address could result in dismissal of your case for failure to prosecute.

Enclosed is a guide prepared by Court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Plaintiff may find useful in prosecuting this case.

Dated at Green Bay, Wisconsin on November 26, 2025.

s/ *Byron B. Conway*  
BYRON B. CONWAY  
United States District Judge